UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JOEL E. DUENAS,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>  Defendant. | Case No. ED CV 17-00193-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Joel E. Duenas ("Plaintiff") appeals for the second time from the Social Security Commissioner's final decision denying his applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

**I.**

**BACKGROUND**

Plaintiff filed applications for DIB and SSI alleging disability beginning on March 25, 2011. See Administrative Record ("AR") 174-82, 612.[1] After a

---

[1] The Court previously noted an ambiguity in the record because the

hearing, an administrative law judge ("ALJ") denied the applications. See AR 23-39. After the Appeals Council denied review, see AR 1-8, Plaintiff sought judicial review in this Court.

In September 2015, the Court reversed the Commissioner's decision and remanded the matter for further proceedings. Duenas v. Colvin, Case No. 5:14-cv-01399-DFM, Dkt. 20; AR 686-98. The Court reversed because the ALJ failed to give specific and legitimate reasons for giving little weight to the treating physician's opinion and failed to give clear and convincing reasons for discrediting Plaintiff's testimony. Id.

On remand, the ALJ held another hearing, at which Plaintiff appeared with counsel. See AR 633-50. The ALJ heard testimony from an impartial medical expert and a vocational expert. See AR 636-50. Also during the hearing, Plaintiff's counsel informed the ALJ that Plaintiff had returned to work in October 2015 and therefore was seeking a closed period of disability. See AR 644-45.

On October 4, 2016, the ALJ issued a decision denying Plaintiff's applications for the closed period of March 25, 2011, to September 30, 2015, based on the following five-step sequential evaluation process. See AR 612-25. First, Plaintiff had not engaged in substantial gainful activity during the period at issue. See AR 615. Second, Plaintiff had severe impairments consisting of compression fracture of C6, compression fracture of T8, degenerative disc disease of the lumbar spine, left patellofemoral syndrome, left knee derangement, left ankle sprain, and right shoulder impingement syndrome. See id. Third, Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment. See AR 617.

---

alleged onset date did not appear to match the date of Plaintiff's accident that caused his allegedly disabling injuries, which was April 25, 2011. See AR 687.

2

Fourth, based on Plaintiff's residual functional capacity ("RFC") for light work with several additional exertional limitations, he could not return to his past relevant work as a security guard, door-to-door salesman, or construction worker. See AR 618, 623. Fifth, based on the RFC and the testimony of the vocational expert, Plaintiff could perform other work in the national economy: gate guard, call-out operator, and surveillance systems monitor. See AR 624. In sum, the ALJ concluded that Plaintiff was not disabled for the closed period. See id.

In February 2017, Plaintiff again sought judicial review in this Court. See Dkt. 1.

## II.
## DISCUSSION

The parties raise the same disputed issues from the prior appeal: whether the ALJ properly considered the treating physician's opinion and Plaintiff's symptom testimony. See Joint Submission (Dkt. 17) ("JS") at 6.

**A.  Treating Physician's Opinion**

    **1.  Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c);[2] Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be

---

[2] The Court applies the regulations that were in effect at the time of the ALJ's decision. Rose v. Berryhill, 256 F. Supp. 3d 1079, 1083 n.3 (C.D. Cal. 2017).

3

rejected only for "clear and convincing reasons." See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. 20 C.F.R. §§ 404.1527(c), 416.927(c).

**2. Background**

On April 25, 2011, Plaintiff was injured in an accident when a truck hit him on the side of the freeway while he was helping a friend fix a blown tire. AR 686-87. Dr. Naresh Sharma, an orthopedist, treated Plaintiff beginning in May 2011, shortly after the accident. Dr. Sharma diagnosed lumbar sprain and strain with possible lumbar radiculopathy, right shoulder impingement with possible rotator cuff pathology, and cervical sprain and strain. AR 317. Dr. Sharma ordered MRIs and prescribed pain medications and physical therapy. AR 318-19. A month later, Dr. Sharma re-evaluated Plaintiff after viewing the MRI results and concluded that "I do not think he is a surgical candidate." AR 325. Dr. Sharma prescribed continued pain medications and physical therapy. Id. Dr. Sharma continued to evaluate and treat Plaintiff on a near-monthly basis throughout the rest of 2011, 2012, and into 2013. AR 326-48, 483-502, 576-88.

///

In February 2013, Dr. Sharma completed a one-page "Physical Capacities Evaluation." AR 504. As the ALJ noted in his first decision, Dr. Sharma's evaluation stated limitations "that would preclude [Plaintiff] from working at the level of substantial gainful activity." AR 36. Dr. Sharma's treatment reports also frequently included the assessment that Plaintiff was not able to work. See AR 495, 566, 582, 585. Dr. Sharma's final treatment note was written in June 2013. AR 865. During that visit, Dr. Sharma commented that Plaintiff's "condition is not changing" and that his "prognosis is poor." AR 866.

During the latest hearing, the ALJ heard the testimony of Dr. Eric Schmitter, an impartial medical expert. AR 636-44. Dr. Schmitter found that Dr. Sharma's opinions were "substantially different" from the other doctors who examined Plaintiff. See AR 637-38. Plaintiff's injuries, according to Dr. Schmitter, were "pretty solidly healed" six months after the accident. See AR 639, 640-41. As support, Dr. Schmitter cited an examining physician's opinion, written eight months after the accident, that "was as close to saying he's as normal as you can get." See AR 640; see also AR 280-84.

### 3. Analysis

In the latest decision, the ALJ continued to give "little weight" to Dr. Sharma's opinions with a one-paragraph explanation containing multiple reasons. AR 622. Because Dr. Sharma's opinions were contradicted, the ALJ was required to state "specific and legitimate reasons" to give little weight to the opinions. As discussed below, the ALJ's reasoning does not satisfy the Ninth Circuit's requirements for the rejection of a treating physician's opinion.

#### a. Unsupported by Objective Medical Findings

The ALJ's first reason for rejecting Dr. Sharma's opinions was that his February 2013 evaluation was unsupported. The ALJ noted that the opinion was given on a "check-the-box" form and that Dr. Sharma "did not provide

any objective clinical or diagnostic medical findings to support the limitations in this evaluation." AR 622; see also AR 504. The fact that an opinion is provided on a check-the-box form, however, is not itself a basis for rejecting it. See Trevizo v. Berryhill, 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]he ALJ was not entitled to reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers. . . . [T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments.").

More significantly, because the record contains an extensive treatment record from Dr. Sharma, it was not accurate for the ALJ to characterize Dr. Sharma's February 2013 evaluation as an isolated evaluation without objective clinical or diagnostic medical findings. As the Court previously found, the record "does not support the ALJ's finding that Dr. Sharma's opinion was not adequately supported by objective medical findings." AR 690. As the Court noted, the record showed positive straight-leg raising tests, a compression fracture of the T8 vertebrae, and a 4-5 mm disk bulge in Plaintiff's lower back. Id. (citing AR 315, 328, 351, 400, 495, 578). Although Dr. Schmitter later testified that the updated record showed the disk bulge was insufficient to qualify Plaintiff as a surgical candidate and the compression fracture had healed, see AR 637, this testimony did not account for the entire record. More than one year after the accident, the disc bulge in Plaintiff's lower back did barely meet the threshold for surgery, but conservative measures were recommended first, see AR 461, which was entirely consistent with Dr. Sharma's recommendation of aggressive physical therapy, see AR 495-96. And the compression fracture of the T8 vertebrae was diagnosed by two examining

6

physicians as a still-existing impairment, with the possibility of an additional compression, in May 2012 and August 2012, more than one year after the accident. See AR 405, 460.

Moreover, as Dr. Schmitter acknowledged, Dr. Sharma also reported several other clinical and diagnostic findings. See AR 638. For example, near the time he gave his February 2013 opinion, Dr. Sharma recorded numbness in the left leg; paresthesia on the L5 nerve root; weakness of the lower left extremity; muscle spasms along the cervical, lumbar, and thoracic spines; and intercostal neuralgia (chest pain). See AR 874-75. In light of these findings, which were based on numerous treatment records, Dr. Sharma's February 2013 opinion was not an isolated opinion that lacked medical record support. See Garrison, 759 F.3d at 1013 (finding error when an ALJ "failed to recognize that the opinions expressed in check-box form in the February 2008 PFC Questionnaire were based on significant experience with Garrison and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit"). Thus, this reason was not a specific and legitimate one for giving little weight to Dr. Sharma's opinions.

b. Inconsistent with Daily Activities

The ALJ also rejected Dr. Sharma's opinions because they were "not consistent with [Plaintiff's] activities of daily living such as running, bicycle riding, and hiking." AR 622; see also AR 272. But as this Court previously noted, when Plaintiff reported these activities to an examining psychiatrist, he also "denied any significant activities." AR 696. "It is thus unclear from the psychiatrist's report whether Plaintiff was indicating that he engaged in running, biking, and hiking after the accident or that he used to engage in those activities before he was injured." Id.

///

7

Evidence of a claimant's daily activities cannot be used to discredit a treating physician's opinion when the nature of those activities is unclear. See Trevizo, 871 F.3d at 676 (concluding that evidence of claimant's daily activities of caring for young children could not be properly used to reject treating physician's opinion when record provided no details as to what those childcare activities involved). It is incumbent upon an ALJ in that circumstance to develop the record about the daily activities that the ALJ suspects may undermine the treating physician's opinion. See id. ("The ALJ did not develop a record regarding the extent to which and the frequency with which Trevizo picked up the children, played with them, bathed them, ran after them, or did any other tasks that might undermine her claimed limitations. . . ."). Because the record was not developed in this regard, the unclear evidence of Plaintiff's daily activities was not a specific and legitimate reason to reject Dr. Sharma's opinions.

        c.      Inconsistent with the Record as a Whole

The ALJ also rejected Dr. Sharma's opinions because they were "inconsistent with the record as whole." See AR 622. First, the ALJ found that "the evidence reflects that [Plaintiff's] neurological deficits waxed and waned during the period at issue," citing normal neurological findings by examining physicians in November 2011 and March 2016. AR 622 (citing AR 283, 849). But these findings had such little probative value that they do not provide a specific and legitimate reason for discounting Dr. Sharma's opinions. As an initial matter, the March 2016 finding has little relevance to Plaintiff's claim because the closed period had ended five months earlier in October 2015, when Plaintiff had returned to work. See Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) (stating that Commissioner may not use evidence arising after closed period ended to discredit medical evidence about claimant's ability to work during that period). And the earlier finding in

8

November 2011 was inconsistent with abnormal findings during the same period. See AR 339 (trapezius spasm of the cervical spine in November 2011); AR 343 ("severe low back pain radiating to the leg and numbness on the left" in December 2011). Thus, the normal neurological finding from November 2011 represented at best an isolated scintilla of evidence, not substantial evidence from the record as a whole. See Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) ("[W]e cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" (citation omitted)). In particular, that single finding did not show relief from symptoms that could be considered significant and lasting. See Lester, 81 F.3d at 833 ("Occasional symptom-free periods . . . are not inconsistent with disability.").

The ALJ also found that Plaintiff "was not described as a surgical candidate, which suggests that his symptoms were not as severe as alleged by Dr. Sharma." AR 622. But this basis has been rejected by the Ninth Circuit because a recommendation for back surgery is not a prerequisite for disability. See Trevizo, 871 F.3d at 677 (commenting, in the specific context of a back impairment, that "the failure of a treating physician to recommend a more aggressive course of treatment, absent more, is not a legitimate reason to discount the physician's subsequent medical opinion about the extent of disability"). As a result, this was also not a specific and legitimate reason for discounting Dr. Sharma's opinions.

    d. Inconsistent with Other Medical Opinions

Finally, the ALJ rejected Dr. Sharma's opinions because of contrary medical opinions, namely, "the findings from Dr. Sharma's examinations and his opinions are not consistent with other medical evidence of record including the opinions of Dr. Flanagan, Dr. Steiger, Dr. Schoene, and the State agency physical medical consultants." AR 622. Dr. Schmitter similarly testified that Dr. Sharma's findings were undermined by "majority rule." AR 638.

9

As Plaintiff points out, the ALJ's evaluation of these opinions was somewhat inconsistent: the ALJ relied on these medical opinions to reject the treating physician's opinions, yet the ALJ elsewhere in the decision afforded "little weight" to most of these same opinions. See AR 622. But even setting aside that apparent inconsistency, this basis for rejecting Dr. Sharma's opinions was not legally sufficient. As discussed below, the only examining physician's opinion that was genuinely inconsistent with Dr. Sharma's opinions was Dr. Flanagan's, which was legally insufficient to support the ALJ's determination.

          i.     Dr. Steiger and Dr. Schoene

The opinions of Dr. Steiger and Dr. Schoene, both examining physicians, did not actually contradict Dr. Sharma's opinions. Dr. Steiger, who examined Plaintiff in May 2012, ordered a further MRI, suggested that Plaintiff may benefit from epidural injections, ordered that Plaintiff continue medications, and recommended the exhaustion of "conservative measures" before surgery. See AR 461. Nothing about these recommendations was inconsistent with Dr. Sharma's treatment records for the same period; in May 2012, Dr. Sharma similarly commented that Plaintiff was not a surgical candidate, recommended aggressive physical therapy, and prescribed pain medications. See AR 495-96. And the opinion of Dr. Schoene, who examined Plaintiff in March 2016, was chronologically irrelevant because Plaintiff had returned to work five months earlier in October 2015 and was no longer alleging disability. See Moore, 278 F.3d at 924. For these reasons, the opinions of Dr. Steiger and Dr. Schoene did not constitute substantial evidence that contradicted the treating physician's opinion for the relevant period.

          ii.    Dr. Flanagan

Dr. Flanagan, another examining physician, did give an opinion that directly contradicted Dr. Sharma's during the relevant period. In November

2011, Dr. Flanagan examined Plaintiff and concluded that his impairments caused "no specific limitations." AR 284.

But Dr. Flanagan's opinion was not substantial evidence because it was not based on independent clinical findings. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (stating that examining physician's opinion must rely on independent clinical findings in order to amount to substantial evidence to discount treating physician's opinion). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence or (2) findings based on objective medical tests that the treating physician has not herself considered." Id. (citations omitted). Dr. Flanagan did not offer different diagnoses supported by substantial evidence, nor did he rely on objective medical tests that Dr. Sharma had not himself considered. To the contrary, Dr. Sharma conducted orthopedic evaluations that were at least as thorough as Dr. Flanagan's one-time examination. See, e.g., AR 321-23, 326-28, 335-37, 577-79.

Even if the Court assumes that Dr. Flanagan made independent clinical findings so that his opinion was substantial evidence, it would still not be a basis on which to reject the treating physician's opinion. Even when an examining physician's opinion is substantial evidence, the Commissioner's regulations still require deference to the treating physician's opinions. See Orn, 495 F.3d at 633. In that circumstance, an ALJ must evaluate the factors set out in the Commissioner's regulations to determine the extent to which the treating physician's opinion should be credited. Id. (citing 20 C.F.R. § 404.1527); see also 20 C.F.R. § 416.927. Because the ALJ did not evaluate these factors here, this alone was reversible error. See Trevizo, 871 F.3d at 676 (holding that even when ALJ decides that treating physician's opinion is not entitled to dispositive weight because it is inconsistent with substantial evidence, ALJ's failure to evaluate factors "such as the length of the treating

11

relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion" is itself reversible error).

These factors favored affording more weight to Dr. Sharma's opinions. For example, the length of the treating relationship and frequency of examination gave Dr. Sharma a "unique perspective" on Plaintiff's condition. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Dr. Sharma treated Plaintiff on a near-monthly basis for more than two years, and each visit involved a physical examination. Dr. Sharma supported his opinions with medical signs and laboratory findings, as described above. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Dr. Sharma, like Dr. Flanagan, was an orthopedic specialist. See 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Dr. Sharma's opinion was consistent with other medical evidence in the record. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Most importantly, and contrary to the ALJ's implicit characterization, Dr. Sharma's opinions were not outliers; Plaintiff saw other specialists who made similar findings. See AR 406 (Dr. Gross's finding in August 2012 of "discogenic low back pain with left L5 radiculopathy, poorly responsive to injections"); 442 (Dr. Weiner's finding in September 2012 of degenerative disc disease of the lumbar spine with no pain relief from injections). Given these factors, the record as a whole did not support the reliance on Dr. Flanagan's opinion to afford little weight to Dr. Sharma's opinions.

In sum, Dr. Flanagan's opinion did not constitute substantial evidence, but even if it did, reversal still would be warranted for failure to properly evaluate the weight to afford to the treating physician's opinion.

        iii.    State Agency Medical Consultants

Two State agency medical consultants also contradicted Dr. Sharma's opinions. The State agency physicians concluded that Plaintiff was capable of

light work during the relevant period. See AR 99-100, 112-13. However, the opinions of non-examining physicians, without more, cannot constitute substantial evidence to reject a treating physician's opinion. Lester, 81 F.3d at 831. In order to constitute substantial evidence, the opinions of non-examining physicians must be "consistent with independent clinical findings or other evidence in the record." Thomas, 278 F.3d at 957 (citations omitted).

The required support is absent here. No physician made independent clinical findings consistent with the State agency physicians' opinions. Nor did the "other evidence in the record" lend sufficient support to their opinions. See Lester, 81 F.3d at 831 (describing the "abundance" of other evidence in the record that generally would warrant reliance on a non-examining physician's opinion) (citing Magallanes v. Bowen, 881 F.2d 747, 751-52 (9th Cir. 1989), and Andrews v. Shalala, 53 F.3d 1035, 1042-43 (9th Cir. 1995)). The record does not contain abundant evidence that was consistent with the State agency physicians' conclusion that Plaintiff was capable of light work during the relevant period. No physician who examined Plaintiff, other than Dr. Flanagan, found Plaintiff capable of light work at any time during the relevant period. Thus, the non-examining physicians' opinions are insufficient to support the rejection of the treating physician's opinions.

**4. Conclusion**

The ALJ's rejection of Dr. Sharma's opinions was not accompanied by specific and legitimate reasons based on substantial evidence in the record. And even if substantial evidence reflected that Dr. Sharma's opinions should not have been afforded controlling weight, it was reversible error not to evaluate what deference the opinions should receive in light of the factors set out in the Commissioner's regulations. Thus, reversal is warranted on this basis.

///

## B. Remand for Further Proceedings

The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the district court. See Trevizo, 871 F.3d at 682. This decision usually requires three steps, in the following order: (1) whether the ALJ committed legal error; (2) whether the record "has been developed thoroughly and is free of conflicts, ambiguities, or gaps"; and (3) whether disability is shown if the improperly rejected evidence was credited as true. See Leon v. Berryhill, 880 F.3d 1041, 1046-47 (9th Cir. 2017). A district court usually does not reach the third step—crediting evidence as true—if, at the second step, the record is not fully developed or suggests that outstanding issues remain. See id. ("A district court cannot proceed directly to credit a claimant's testimony as true and then look to the record to determine whether any issues are outstanding, as 'this reverses the required order of analysis.'" (citation omitted)).

Here, the first step has been satisfied due to legal error based on the failure to properly consider the treating physician's opinions. But the second step has not been satisfied because, even assuming that the record establishes disability during the closed period, outstanding issues remain. The record is ambiguous about both the beginning and end dates of the closed period. It is unclear whether the disability onset date was in March or April 2011; more critically, it is unclear whether the closed period ended sometime before Plaintiff returned to work in October 2015. As noted above, Dr. Sharma's treatment records do not continue after June 2013. Given these ambiguities, a district court in the usual case would not reach the question of whether the treating physician's opinion should be credited as true. See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (ambiguous evidence about the claimant's disability onset date precluded the application of the credit-as-true rule); see also Howell v. Astrue, 248 F. App'x 797, 800-01 (9th Cir. 2007) (remand for

14

further proceedings was appropriate when the dates for a closed period of disability were unclear).

However, in some cases "there are other factors which may justify application of the credit-as-true rule, even where application of the rule would not result in the immediate payment of benefits." Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009). These factors exist here. The most important factor is that the Commissioner has already had two opportunities to evaluate Dr. Sharma's opinions. See Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."). Plaintiff's applications have been pending for over six years, since August 2011. See Hammock v. Bowen, 879 F.2d 498, 503 (9th Cir. 1989) (applying the credit-as-true rule, even when the claimant's entitlement to benefits was unclear, in part because the claimant had experienced severe delay). Crediting Dr. Sharma's opinions as true would "prevent unnecessary duplication in the administrative process." Vasquez, 572 F.3d at 594. Application of the credit-as-true rule is therefore appropriate here.

On remand, the Commissioner is directed to accept Dr. Sharma's opinions as true. This would establish an unspecified closed period of disability because the ALJ stated at the second hearing that a person with the described limitations would be unemployable. See AR 648-49. Thus, the only remaining issues to be determined are the beginning and end dates of Plaintiff's closed period of disability.

C. **Remaining Issue**

Given the Court's conclusions about the treating physician's opinions, it is unnecessary to address Plaintiff's remaining issue regarding the rejection of his subjective symptom allegations. See Trevizo, 871 F.3d at 677 (concluding that treating physician's opinion alone can be sufficient to establish claimant's

15

entitlement to benefits).

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the matter is REMANDED for further proceedings.

Dated: March 23, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge